IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02237-ZLW-MEH

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

DILLON COMPANIES, INC., d/b/a KING SOOPERS,

    Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

    Pending before the Court is Plaintiff's Motion to Quash and for Sanctions [filed March 24, 2010; docket #23]. The motion is referred to this Court for disposition. (Docket #24.) The matter is fully briefed, and oral argument would not assist the Court in its adjudication. For the reasons stated below, the Court **grants in part** and **denies in part** Plaintiff's Motion.

    Plaintiff brings this action on behalf of Justin Stringer against Defendant, which is Mr. Stringer's former employer. (Docket #32 at 1.) Plaintiff asserts Defendant violated the Americans with Disabilities Act by creating a hostile work environment for Mr. Stringer and by unlawfully terminating Mr. Stringer's employment, due to Mr. Stringer's learning disability. (*Id*.) Defendant contends that Mr. Stringer struck a supervisor and impeded her attempt to telephone for help. (Docket #33 at 1.)

    In the motion presently before the Court, Plaintiff seeks to quash subpoenas served by Defendant on seven non-parties, including Mr. Stringer's physician, Jefferson County Public Schools (where he attended primary and secondary education), the Colorado Department of Human Services (Division of Vocational Rehabilitation), the companies at which Mr. Stringer applied for

employment after his termination, and his current employer. Plaintiff objects to these subpoenas on the following grounds:

1. <u>Defendant failed to provide advance notice of some of the subpoenas, as required by Fed. R. Civ. P. 45(b)(1).</u>

Originally, Defendant requested that Plaintiff execute releases for documents from various entities. Plaintiff objected. On March 11, 2010, Defendant informed Plaintiff that if releases were not received by March 17, 2010, it would serve subpoenas on medical providers and subsequent employers (which would logically include his current employer). Plaintiff immediately informed Defendant that releases would not be forthcoming, and that it would file a motion to quash. Upon receiving this notice, Defendant did not wait for the original March 17 deadline, but served subpoenas as referenced above. The March 11, 2010 letter did not address the Jefferson County Public Schools, the Colorado Department of Human Services (although perhaps these may fall under the rubric of health provider records), or potential employers to whom Stringer had submitted applications. Plaintiff also contends that contrary to its normal practice of e-mailing all correspondence, in this instance Defendant put copies of the Rule 45 subpoenas in the regular mail, thereby intentionally thwarting Plaintiff's ability to quash the subpoenas prior to the subpoenaed entity complying (which did occur as to Jefferson County Public Schools and Safeway).

2. <u>Plaintiff has already produced relevant documents.</u>

Plaintiff contends that it has already produced relevant documents from Plaintiff's medical care provider, Jefferson County Public Schools, and the Colorado Department of Human Services. Thus, the subpoenas are cumulative. Moreover, Plaintiff contends that these subpoenas seek to subvert the limits on requests for production of documents.

3. <u>The subpoenas seek irrelevant documents.</u>

Plaintiff contends that the subject matter of the subpoenas, and their lack of time limitation,

render irrelevant or overbroad the information they seek.

4. <u>The subpoena to Regal Entertainment Group is a foreign subpoena.</u>

Defendant served this subpoena in Tennessee, outside the jurisdiction of the Court.

Finally, Plaintiff contends that Defendant's behavior in issuing the subpoenas was abusive and should be sanctioned.

Underlying the current dispute is the age-old debate about whether a Plaintiff should or must execute releases so that the Defendant can get the documents itself; whether the Defendant should allow the Plaintiff to get the documents and then turn them over to the Defendant; or whether the Defendant should have to subpoena the documents. Although there is no one-size-fits-all answer, as a general matter I believe the most efficient manner to obtain documents in this type of case is the execution of releases by the Plaintiff. This puts the expense of getting the documents on the Defendant, which expense, normally, an employment discrimination defendant is happy to bear. It satisfies the natural inclination for an employment discrimination defense attorney to gather all possible documents from a third party, instead of relying on the Plaintiff's counsel to gather the documents and turn them over (especially where, as is apparent here, the attorneys do not really trust each other). Plaintiff's counsel does not normally want defense counsel to have unfettered access to these third party documents, which I also understand. Of course, the defense lawyer is required to turn all documents received over to plaintiff's counsel, but the proverbial cat may already be out of the bag.

However, as Plaintiff's counsel points out, execution of releases is not specifically mandated by the Federal Rules of Civil Procedure. It may take cooperation for the defense lawyer to obtain records under this preferred way. When, as here, such cooperation is not forthcoming, the defense lawyer's next best alternative is direct subpoena. I do not find anything blameworthy, as a general

matter, in this method of obtaining third-party documents, even if it results in duplication of efforts in which the plaintiff's counsel has already engaged. What I do find blameworthy is the lack of communication between Defendant's counsel and Plaintiff's counsel. It is my job to ensure a fair fight and a level playing field. It does appear that by not disclosing all of the types of entities to whom subpoenas were to be issued, Defendant was attempting to win the race to the courthouse. In my opinion, defense counsel in this situation should clearly, comprehensively, and timely inform his adversary of his intention to subpoena documents from a third party. Then, if there is a fight to be had over access to documents, the Court will be involved and could then permit defense counsel to obtain all relevant documents. There may be adverse consequences to the Defendant if it obtains documents that a judge believes it should not have obtained. The safest route is full disclosure and let the chips fall where they may.

I do not find fault with the timing of the subpoenas, as it was clear that Plaintiff rejected any notion of executing releases, thereby unambiguously informing Defendant that a compromise would not be reached. I also believe that the information sought is of sufficient relevance for discovery purposes, and that subpoenaing third parties is unrelated to the permissible number of requests for production of documents.

Now, as for a remedy, Defendant concedes that the out-of-district subpoena should be quashed, thus Plaintiff's motion is granted to that extent. I have made my opinion clear about communication, so I would expect that all further discovery will be handled appropriately, with advance notice, and service on the other side should be accomplished by electronic means when practicable. The motion for sanctions is denied, primarily because I typically follow the one-bite rule. The second bite would be dealt with in a different manner.

Accordingly, Plaintiff's Motion to Quash and for Sanctions [filed March 24, 2010; docket #23] is granted to the extent the subpoena issued to Regal Entertainment in Knoxville, Tennessee, is to be withdrawn by Defendants' counsel and denied in all other respects.

Dated this 13th day of May, 2010, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge