IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 09-cv-02237-ZLW-MEH

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

DILLON COMPANIES, INC. D/B/A KING SOOPERS,

    Defendant.
_____

ORDER
_____

    The matters before the Court are (1) Defendant's Motion For Summary Judgment (Doc. No. 88), (2) the EEOC Rule 56(D) Motion To Dismiss Or Defer Judgment On Defendant's Motion For Summary Judgment (Doc. No. 90), and (3) Plaintiff's Motion For Partial Summary Judgment (Doc. No. 87).  The Court has reviewed carefully the moving and responding papers and the applicable legal authority.

**I.    Background**

    Plaintiff Equal Employment Opportunity Commission (Plaintiff or the EEOC) brings this action pursuant to 42 U.S.C. § 12117(a), asserting that Defendant Dillon Companies, Inc. d/b/a King Soopers (Defendant or King Soopers) discriminated against Justin Stringer in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101-12213 (ADA).

    Mr. Stringer, who is 34 years old, has certain learning and cognitive impairments. He has an IQ of 63, which indicates an extremely low range of intellectual functioning.

Mr. Stringer was hired in 1995 as a courtesy clerk in a King Soopers supermarket in Lakewood, Colorado. His duties as a courtesy clerk included collecting shopping carts from the parking lot, bagging groceries and loading them into carts, and sweeping the floor.[1] Mr. Stringer testified in his deposition that in March 2006, Gabby Sedillos, the Head Clerk, began picking on him by threatening to call his mother.[2] Plaintiff has submitted evidence that employee Diane Ruybal heard Ms. Sedillos tell Mr. Stringer that she was going to call his mother at least four times, and that Ms. Ruybal also heard Rachael Scott, the Acting Service Manager, threaten to call Mr. Stringer's mother on one occasion.[3] Mr. Stringer testified that Ms. Sedillos also told him that she did not want to have to "babysit" him.[4] Bernadine Brannan, another employee, testified that one day Ms. Sedillos and Ms. Scott changed the time of Mr. Stringer's break just to make him mad and see what he would do.[5] Linda Stringer, Mr. Stringer's mother, testified in her deposition that on numerous occasions in the months preceding Mr. Stringer's termination, Mr. Stringer told her that Ms. Sedillos had picked on him or been mean to him at work, but he did not provide any more detail.[6]

---

[1] Doc. No. 93-14 at 13.

[2] Id. at 134.

[3] Doc. No. 93-2 at 52, 56, 83.

[4] Doc. No. 93-14 at 96.

[5] Doc. No. 93-11 at 10.

[6] Doc. No. 93-16 at 73-74.

According to Mr. Stringer's deposition testimony, on the same day that Mr. Stringer's break was moved, June 22, 2006, Ms. Sedillos told him that she was going to call his mother.[7] Ms. Sedillos went into the booth, which is a secured area of the store where the safe is located and cash and other valuables are kept. Mr Stringer knocked on the door and went into the booth.[8] Ms. Sedillos was on the telephone. Mr. Stringer testified that he was scared, and that he bumped Ms. Sedillos with his shoulder and pushed the button on the phone which disconnected the call.[9] Mr. Stringer and Ms. Sedillos then went upstairs to see Ms. Scott.[10] Ms. Scott contacted Stephanie Bouknight in Defendant's Labor Relations department, and also spoke with Patrick Callahan, the Acting Assistant Store Manager.[11] Mr. Stringer was told that he was being sent home for pushing Ms. Sedillos.[12] He was terminated effective June 24, 2006.[13] The Employee Termination Form formalizing his termination states that Mr. Stringer was terminated for "misconduct," detailing that "Jason [sic] pushed Gabby (Head Clerk) while she was on the phone in the booth he also hung up the phone. Stephanie

---

[7] Doc. No. 93-14 at 155.

[8] Doc. No. 93-4 (J. Stringer video deposition).

[9] Id; Doc. No. 93-14 at 98.

[10] Doc. No. 88-11 at 127.

[11] Id. at 132; Doc. No. 88-20 at 33.

[12] Doc. No. 88-12 at 1.

[13] Doc. No. 88-9.

Bouknight at Labor Relations instructed to terminate for gross misconduct."[14]

Plaintiff asserts one claim for hostile work environment under the ADA, and one claim for unlawful termination under the ADA.

## II.     Legal Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15]

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[16]

The moving party need not negate the nonmoving party's claims, but need only point to an "absence of evidence to support the nonmoving party's case."[17]  The party opposing the motion then must come forward with evidence sufficient to create a genuine issue of

---

[14] Id.

[15] Fed. R. Civ. P. 56(a).

[16] Fed. R. Civ. P. 56(c)(1).

[17] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

material fact.[18] On summary judgment the district court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party.[19]

### III. Analysis

#### A. Defendant's Motion For Summary Judgment

##### 1. First Claim For Relief:  Hostile Work Environment - 42 U.S.C. § 12112(a)

The United States Court of Appeals for the Tenth Circuit has held that hostile work environment claims are actionable under the ADA.[20] However, "the ADA, like Title VII, is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'"[21] Thus, "[f]or a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[22] "To evaluate whether a working environment is sufficiently hostile or abusive, we examine all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4)

---

[18] Id. at 324.

[19] Couch v. Board of Trustees, 587 F.3d 1223, 1235 (10th Cir. 2009).

[20] See Lanman v. Johnson County, Kan., 393 F.3d 1151, 1155 (10th Cir. 2004).

[21] Anderson v. Coors Brewing, 181 F.3d 1171, 1178 (10th Cir. 1999) (quoting Gunnell v. Utah Valley State College, 152 F.3d 1253, 1265 (10th Cir. 1998)).

[22] Penry v. Home Loan of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998).

whether the conduct unreasonably interferes with the employee's work performance."[23] Additionally, the environment must be both subjectively *and* objectively hostile or abusive.[24] In other words, the plaintiff must show not only that he or she subjectively perceived the environment to be abusive, but also that the conduct was "severe or pervasive enough to create . . . an environment that a *reasonable person* would find hostile or abusive."[25] In assessing whether the conduct was objectively hostile or abusive, the court does not consider the conduct from the perspective of an objectively reasonable person with the plaintiff's particular disability, even if the disability is a mental disability.[26] Rather, the court employs the objective "reasonable person" standard set forth above.[27]

Here, a reasonable jury could not find, based on the evidence submitted by Plaintiff, that the conduct to which Mr. Stringer was subjected was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive. The allegedly harassing conduct, consisting of approximately four statements made to Mr. Stringer that his mother was going to be called, several comments by a supervisor that she did not want to "babysit" him at work, and evidence that Mr. Stringer's schedule was changed on one occasion in order to upset him, while

---

[23]MacKenzie v. City and County of Denver, 414 F.3d 1266, 1280 (10th Cir. 2005).

[24]Id.

[25]Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (emphasis added).

[26]See Casper v. Gunite Corp., 2000 WL 975168, *6 (7th Cir. July 11, 2000).

[27]Id.; see also MacKenzie, 414 F.3d at 1280.

unprofessional and insensitive, does not constitute evidence of a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[28]  The cited conduct was not frequent, severe, physically threatening or especially humiliating, and a reasonable jury could not find that it would reasonably interfere with an employee's work performance.  Although Mr. Stringer may have subjectively experienced the conduct as hostile and abusive, Plaintiff must present evidence that an objectively reasonable person would as well.  It has failed to do so.  Accordingly, Defendant's Motion For Summary Judgment will be granted on the first claim for relief.

### 2.    Second Claim For Relief: Unlawful Termination - 42 U.S.C. § 12112(a)

Plaintiff's second claim for relief alleges discrimination under the ADA based on disparate treatment.  In order to establish a prima facie claim of disparate treatment under the ADA, a plaintiff "must first establish a prima facie case of discrimination, showing a genuine issue of material fact exists on each of three points: '(1) [he] is a disabled person as defined by the ADA; (2) [he] is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) [his] employer discriminated against [him] because of [his] disability."[29]  If the plaintiff is able to make this prima facie showing, then the burden shifts to the defendant to

---

[28] MacKenzie, 414 F.3d at 1280 (quoting Penry, 155 F.3d at 1261).

[29] Johnson v. Weld County, 594 F.3d 1202, 1217 (10th Cir. 2010).

articulate a legitimate, nondiscriminatory reason for the adverse employment action.[30] If the defendant does so, then the burden shifts back to the plaintiff to establish that the defendant's proffered reason is a pretext for unlawful discrimination.[31]

Defendant argues, first, that Plaintiff has submitted "vastly insufficient" evidence that Mr. Stringer is disabled within the meaning of the ADA. As is pertinent here, an individual is "disabled' under the ADA if he or she has a physical or mental impairment that "substantially limits one or more of the major life activities of such individual."[32] Plaintiff contends that Mr. Stringer is substantially limited in the major life activities of speaking, reading, learning, and caring for himself.[33] Whether an individual is substantially limited in a particular major life activity is a fact question for the jury.[34]

> Determining both how well 'the average person in the general population' performs any given major life activity and whether the plaintiff has proven he is 'unable to perform' or is 'significantly restricted' in performing a major life activity involves weighing evidence and assessing credibility of witnesses, tasks historically given to the jury in our judicial system.[35]

---

[30] Id.

[31] Id.

[32] 42 U.S.C. § 12102(2).

[33] See 29 C.F.R. § 1630.2(h); Shaffer v. Spherion Corp., 2007 WL 4557778 (D. Colo. Dec. 20, 2007).

[34] Doeble v. Sprint/United Mgt. Co., 342 F.3d 1117, 1129 (10th Cir. 2003).

[35] Id. (quoting Bristol v. Bd. of County Comm'rs, 281 F.3d 1148, 1158 (10th Cir. 2002) (quoting 29 C.F.R. § 1630.2(j)).

Plaintiff has submitted the declaration and report of Jen Pastalo Dacpano, a Nationally Certified School Psychologist with an Educational Specialist degree in School Psychology, who assessed Mr. Stringer's learning abilities in 2007 upon referral from the Golden Division of Vocational Rehabilitation. Defendant objects to Ms. Dacpano's declaration and report on the ground that Plaintiff did not disclose Ms. Dacpano as an expert witness. However, the Court need not reach the question of whether Ms. Dacpano's declaration and report can be considered on this motion because, even without considering said evidence, Plaintiff has raised a triable issue of material fact as to whether Mr. Stringer is substantially limited in the major life activities of speaking, reading, learning, and caring for himself.

Plaintiff has submitted evidence, including Mr. Stringer's mother's deposition testimony and video excerpts of Mr. Stringer's own deposition, that Mr. Stringer has difficulty enunciating words and can be difficult to understand. Mr. Stringer was in a special education program through the 12th grade, and his school records at age 19 state that he had the intellectual functionality of a first or second grader in all academic areas. The records indicate that Mr. Stringer cannot manage money or get to a store on his own. Although the records are dated 1997, there is no evidence that Mr. Stringer's functioning has improved over time. Drawing all reasonable inferences from the evidence in the light most favorable to the Plaintiff, even without considering Ms. Dacpano's declaration and report, the evidence is sufficient to raise a triable issue of material fact on summary judgment as to whether Mr. Stringer is substantially limited in one or more major life activities.

Defendant also argues that Plaintiff cannot establish the second element of its prima facie case because Mr. Stringer demonstrated that he was no longer qualified for his job when he "shoved Ms. Sedillos, forced his way into the booth, refused to leave the booth, and repeatedly grabbed the phone out of Ms. Sedillos' hand."[36] Setting aside that this particular characterization of events is disputed by Plaintiff, Defendant has submitted no evidence indicating that after eleven years of employment as a Courtesy Clerk at King Soopers Mr. Stringer suddenly became "unqualified" for his position on June 22, 2006.  Defendant's argument goes to the "legitimate, nondiscriminatory reason" step of the analysis, not to the second element of Plaintiff's prima facie case.[37]

With regard to the third element of the prima facie case, Plaintiff has submitted evidence creating a disputed issue of material fact as to whether Defendant discriminated against Mr. Stringer because of his disability.  Based on the evidence before the Court, a reasonable jury could conclude that Mr. Stringer engaged in the acts for which he was terminated because of his disability.  While Defendant argues that Mr. Stringer was legitimately terminated because he pushed Ms. Sedillos and grabbed or hung up the phone, Defendant cannot conflate the third element of the prima facie case with the "legitimate, nondiscriminatory reason" step of the analysis.

Defendant has proffered a legitimate, non-discriminatory reason for Mr. Stringer's discharge:  that he violated Defendant's Threats and Violence Policy by bumping or

---

[36]Defendant's Motion For Summary Judgment (Doc. No. 88) at 22.

[37]See MacDonald v. Eastern Wyo. Mental Health Center, 941 F.2d 1115, 1119 (10th Cir. 1991) (the defendant cannot short-circuit the analysis at the prima facie stage by asserting that the plaintiff cannot establish a prima facie case based on the proffered reason for the discharge).

pushing Ms. Sedillos and grabbing the phone from her and/or hanging it up. Thus, Plaintiff must come forward with evidence indicating that this proffered reason is pretext for unlawful discrimination. "Evidence sufficient to raise a fact issue on whether a defendant's proffered explanation is pretextual may take a variety of forms, including evidence that the defendant treated the plaintiff differently from others who were similarly situated, which we have held is especially relevant to a showing of pretext."[38] Plaintiff has submitted evidence that an Assistant Store Manager at the store where Mr. Stringer worked grabbed another employee by the collar but was not terminated. Plaintiff also has submitted evidence that another employee smashed a cart into a checker's stand on purpose, slapped the checker, and later punched the self-checkout scanning equipment but was not terminated.[39] Plaintiff has submitted sufficient evidence of pretext to overcome summary judgment.

### 3. Conciliation

Defendant argues that this case should be dismissed or stayed based upon Plaintiff's failure to conciliate under 42 U.S.C. § 2000e-5(b), which provides, in pertinent part, that "[i]f the Commission determines after such investigation that there is reasonable cause to believe that the charge [by the aggrieved person] is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice

---

[38] Gossett v. Oklahoma, 245 F.3d 1172, 1177 (10th Cir. 2001).

[39] The fact that Mr. Stringer may have had a different supervisor than these employees does not prohibit consideration of comparator evidence since Plaintiff contends that Mr. Stringer was the victim of the discriminatory application of a facility-wide policy. See id.

by informal methods of conference, conciliation, and persuasion."[40]  "[T]he EEOC is required to act in good faith in its conciliation efforts,"[41] and must make a "sincere and reasonable effort to negotiate by providing the defendant an adequate opportunity to respond to all charges and negotiate possible settlements."[42]  However, "a court should not examine the details of the offers and counteroffers between the parties, nor impose its notions of what the agreement should provide . . . ."[43]  The United States Court of Appeals for the Sixth Circuit has held that "[t]he district court should only determine whether the EEOC made an attempt at conciliation.  The form and substance of those conciliations is within the discretion of the EEOC as the agency created to administer and enforce our employment discrimination laws and is beyond judicial review."[44]

      The Court is troubled by evidence indicating that at the time of the parties' conciliation meeting, Mr. Stringer's parents were seeking reinstatement as a remedy for their son, and were not aware that the EEOC represented to Defendant during the meeting that Mr. Stringer was not interested in reinstatement.  However, the Court's only function in assessing whether the EEOC met its statutory obligation to conciliate is to determine whether the EEOC made an attempt at conciliation, not to evaluate the

---

[40]The powers, remedies, and enforcement procedures under Title VII, 42 U.S.C. § 2000e et seq., are incorporated into the ADA.  See 42 U.S.C. § 12117(a).

[41]E.E.O.C. v. The Zia Co., 582 F.2d 527, 533 (10th Cir. 1978).

[42]E.E.O.C. v. Prudential Sav. And Loan Ass'n, 763 F.2d 1166, 1169 (10th Cir. 1985) (internal quotation omitted).

[43]Zia, 582 F.2d at 533.

[44]E.E.O.C. v. Keco Industries, Inc., 748 F.2d 1097, 1102 (6th Cir. 1984).

form and substance of that conciliation. The EEOC did make a reasonable attempt at conciliation, and the Court cannot second-guess the particular contours of that attempt. As all are aware, the parties have the ongoing ability to attempt to negotiate a resolution of the remaining claim in this case prior to trial.

### B. EEOC Rule 56(D) Motion To Dismiss Or Defer Judgment On Defendant's Motion For Summary Judgment

Because the Court denies Defendant's motion for summary judgment on the second claim for relief, the EEOC Rule 56(D) Motion To Dismiss Or Defer Judgment On Defendant's Motion For Summary Judgment, which addresses only the second claim for relief, is denied as moot.

### C. Plaintiff's Motion For Partial Summary Judgment

Plaintiff moves for partial summary judgment on Defendant's second, 13th, 14th, 16th, and 17th affirmative defenses.[45] The 13th, 14thth, and 17th affirmative defenses relate only to Plaintiff's first claim for relief for hostile work environment. Because the Court dismisses the hostile work environment claim herein, the 13th, 14thth, and 17th affirmative defenses are dismissed with prejudice as moot.

Defendant's second affirmative defense asserts that Plaintiff's claims are barred by the doctrines of waiver, estoppel, and laches. Defendant contends that Plaintiff waived and is estopped from requesting reinstatement for Mr. Stringer because Plaintiff asserted during the parties' April 8, 2009, conciliation that Mr. Stringer was not interested in reinstatement. The only authority that Defendant cites in direct support of

---

[45]Plaintiff's motion brief mis-identifies the relevant defenses at pages 1-2. See Doc. No. 87 at 1-2.

its waiver defense is the decision of the United States Court of Appeals for the First Circuit in <u>Achilli v. John J. Nissen Baking Co.</u>.[46] However, the plaintiff in <u>Achilli</u> had testified under oath that he did not seek reinstatement, while no such sworn statement has been made by Mr. Stringer in the present case. With respect to Defendant's estoppel defense, Defendant has failed to submit any evidence that Plaintiff took an earlier inconsistent position in a legal proceeding and persuaded a court to accept that position.[47] Finally, Defendant has submitted no evidence to support a laches defense. Summary judgment in Plaintiff's favor is appropriate on Defendant's second affirmative defense.

Defendant's 16th affirmative defense asserts that Plaintiff has failed to comply with its statutory duty to conciliate with regard to Plaintiff's second claim for relief. For the reasons set forth in Part III.A.3 of this Order, summary judgment properly is entered in Plaintiff's favor on the 16th affirmative defense.

Accordingly, for the reasons set forth above, it is

ORDERED that Defendant's Motion For Summary Judgment (Doc. No. 88) is granted in part and denied in part. The motion is granted as to Plaintiff's first claim for relief and denied as to Plaintiff's second claim for relief. It is

FURTHER ORDERED that Plaintiff's first claim for relief is dismissed with prejudice. It is

---

[46] 989 F.2d 561 (1st Cir. 1993).

[47] See <u>Johnson v. Lindon City Corp.</u>, 405 F.3d 1065, 1069 (10th Cir. 2005).

FURTHER ORDERED that the EEOC Rule 56(D) Motion To Dismiss Or Defer Judgment On Defendant's Motion For Summary Judgment (Doc. No. 90) is denied as moot. It is

FURTHER ORDERED that Plaintiff's Motion For Partial Summary Judgment (Doc. No. 87) is granted. It is

FURTHER ORDERED that Defendant's second, 13th, 14th, 16th, and 17th affirmative defenses are dismissed with prejudice. It is

FURTHER ORDERED that this action shall proceed on Plaintiff's second claim for relief and on Defendant's first, 3rd through 12th, and 15th affirmative defenses.

DATED at Denver, Colorado, this 30th day of March, 2011.

BY THE COURT:

*[signature: Zita Leeson Weinshienk]*

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court